No. 12,735.

EASTENES *v.* ADAMS ET AL.

(25 P. [2d] 741)

Decided September 18, 1933.

Mr. FRED S. CALDWELL, for plaintiff in error.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. FRED A. HARRISON, Assistant, Mr. HORACE N. HAWKINS, Mr. HORACE N. HAWKINS, JR., Mr. EDWARD P. COSTIGAN, Messrs. NORTHCUTT & NORTHCUTT, for defendants in error.

*En Banc.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THE plaintiff, who is plaintiff in error here, sued in the district court to recover damages for the death of her husband from a gunshot wound alleged to have been fired by some one of twenty persons who included two of the defendants herein, Scherf and Lee, the particular one firing the shot not being known to the plaintiff.

■ By six consecutive amendments the initial pleading in this case underwent radical changes until finally it emerged as the "fourth amended complaint." On this the plaintiff elected to stand after the court sustained demurrers interposed thereto. She now seeks to reverse the judgment of dismissal which followed. The supplemental abstract of the record pictures the evolution and transformation of the pleadings. An examination of the original complaint discloses an attempt to state a cause of action on an entirely different theory from the one on which the last complaint is based. Its allegations and its prayer for $50,000 as damages clearly showed that a recovery was sought under some other provision than C. L. '21, §§6303 and 6304, which seem to be relied upon in the "fourth amended complaint," and will be more particularly discussed later on. Under our Code of Civil Procedure, this complete shifting to an entirely different basis would in and of itself be a sufficient reason for affirming the judgment.

But even if this were not a decisive factor, the so-called fourth amended complaint would be inadequate in the light of the record before us, and an affirmance would have to follow. An examination of the various complaints, both in original and amended form, enables us to determine with reasonable certainty that the plaintiff has deliberately chosen to withdraw the charge of direct and personal murder which she made in the original complaint as follows:

"That, on said 21st day of November, 1927, at the premises of defendant, The Rocky Mountain Fuel Company, in Weld County, Colorado, known as the Columbine Mine, said defendants acting together wrongfully, pursuant to and in execution of a pre-arranged plan, conspiracy and design, and with wanton, willful and reckless disregard of the personal rights and safety of the said John Eastenes, and of said property rights of these plaintiffs in his life, did then and there shoot and instantly kill him, the said John Eastenes, thereby damag-

ing plaintiffs [the widow and six children of the deceased] in the sum of $50,000.00."

Inasmuch as certain of the defendants pleaded that this and other complaints are sham, it is proper for us now to deal with the form and substance of this defense as set up herein. Such a plea should be clearly established in order that he who presents it may not himself be suspected of shamming for the purpose of delay.

In the present instance the original complaint was met by a plea of sham pleading in an unequivocal and circumstantial way that at once removes all reasonable suspicion of a desire on the part of the defendants to lead the court into a mere maze of technicalities or frivolities, time-consuming and insincere.

The defendant Adams, who was then Governor of Colorado and whose official position was not disclosed in the original complaint, filed a motion from which, because of its importance in view of the Governor's own situation as a party herein, but also because of its inherent bearing upon the case as a whole, we quote at some length as follows:

"Comes the defendant William H. Adams, and moves the court that the above styled cause be dismissed as to this defendant or stricken from the files as to this defendant; and as grounds alleges:

"That the said complaint as to this defendant is a sham complaint, and this defendant's name was included in said complaint as a defendant for the purpose of annoying, harassing and vexing this defendant, and for the purpose of putting him to the trouble and expense of defending a lawsuit, and was not filed against this defendant in good faith. That said action against this defendant is wholly and clearly without merit, is frivolous and scandalous, and is without the slightest foundation of fact to support it. That said action is an abuse of the process and jurisdiction of this court. * * * Defendant further says that the statement in said complaint that this defendant shot and killed one John East-

enes, is a wilful and deliberate fabrication, without the slightest foundation of truth. That the statement in said complaint that this defendant entered into a pre-arranged plan, conspiracy and design to kill said Eastenes, is a wilful and deliberate fabrication, without the slightest foundation of truth. * * * This defendant further states that he is informed and believes, and upon information and belief he alleges that the said John Eastenes on the date mentioned in the complaint, to-wit, the 21st day of November, 1927, was a member of a mob of several hundred men, known as I. W. W.'s, and that said mob of men on said date, with force and violence unlawfully and illegally entered upon and trespassed upon the enclosed mining property of The Rocky Mountain Fuel Company at the Columbine mine, situate in the county of Weld and state of Colorado. That there were present on said mining property certain officers of the State of Colorado, who warned said mob that the members thereof were breaking the law and committing a trespass on said property, and said officers sought to induce said mob, and requested the members of said mob to desist from their unlawful conduct and to retire from said premises. That the said mob of men refused to heed said warning, and refused to obey said request, and violently and feloniously with dangerous and deadly weapons attacked said officers of the law, and beat, bruised and wounded numbers of said officers. That the said mob was so large, and composed of so many members, and their assault on the said officers was so violent that the said officers were driven back by the mob and forced to retire for a long distance as said mob of men advanced upon the officers and advanced farther into the said mining property. That finally, said officers after having been driven back by the mob, being unable to longer withstand or repel the said felonious assault being made upon them, shot and killed some of the members of said mob, including said Eastenes, said shooting being done in the proper and necessary defense of said officers, and for the protection

of said property. That said shooting did not occur until the said Eastenes and other members of the mob had been repeatedly warned in the name of the law to desist in their said unlawful attack and retire from the property on which they were trespassing, nor until the said mob had repeatedly refused to obey, and had continued its felonious and violent attack upon said officers. That this defendant was not present at the scene of said occurrence, but was in the city of Denver, where he resides for the performance of duties as governor of the state of Colorado, which official position he is now occupying, and was occupying on the said 21st day of November, 1927, and this defendant knew nothing whatever of said mob being there, or of said happenings, until after they had occurred. That this defendant had nothing of any nature, character or kind to do with the death of said deceased, and did not know the said deceased, and had never even heard of him until after his death. That no pre-arranged plan, and no conspiracy or design was ever formed, either to kill or injure, or in any way wrong said Eastenes, or any one else, and the charge made against this defendant in said bill of complaint is malicious, wanton, frivolous and scandalous, and was made to annoy, harass and vex this defendant, and not made in good faith. * * *"

Attached to the motion and made a part thereof were affidavits by Sterling B. Lacy and Thomas Annear, two prominent citizens of Colorado, whose character and high standing are matters of common knowledge. Their affidavits fully corroborated and amplified the statements of Governor Adams.

We have no hesitancy in saying that the showing thus made by Governor Adams, in the form of a verified plea, was sufficient to call for an equally formidable and detailed answer thereto, or verified showing to the contrary. There is no fairer or more effective method known to us of presenting the issue of sham pleading than the one his counsel have adopted herein. A court

ought not to hesitate in granting a prompt trial of such a preliminary issue of sham pleading without requiring a party to incur the expense of time and money involved in postponing its determination until later in the proceedings, possibly until the main trial. Looking through the form and at the substance, a court has the power of controlling—and of condignly punishing—all attempts, should any be made, to impose upon the court by raising the issue frivolously or with palpable insincerity. The method chosen by defendants' counsel in this case was signally appropriate, used as it was on behalf of the chief executive of the state for the purpose of conserving in the interest of the whole people the strength and energies required for the faithful performance of his gubernatorial duties, unhindered and unharassed by unjustified court proceedings, though plausible on their face. In the absence of any and all showing to the contrary, the allegations of the motion stood proved and admitted. The motion therefore ought to have been sustained by the lower court, and Governor Adams dismissed from the case.

But the court did not sustain the motion. Nor did it sustain similar motions interposed to the later complaints and reincorporating the contents of the first motion and strengthening it. Such motions were regularly filed by Governor Adams and by the defendants Scherf and Lee, the only law-enforcement officers who are made parties defendant. What has been said applies to these renewed motions. At no time was there any counter-affidavit on behalf of the plaintiff except one at the very last. That one was made by the plaintiff's attorney himself, based in part on unimportant testimony given at the coroner's inquest by the witness Lacy and the defendant Scherf, and in part on his own mere opinion, unsupported by specific allegations of fact.

It is a devious path that the pleader has traveled, from the main allegation quoted earlier in this opinion, as the gist of the first complaint, to the ''fourth amended

complaint.'' After all the changes, the last complaint alleges:

"4. That sometime between the first day and said 21st day of November, A. D. 1927, the defendant, The Rocky Mountain Fuel Company, then and there acting by and through Merle D. Vincent, its Vice-President and General Manager, and the defendant, Fred L. Peart, its mine superintendent and mine manager, complained to said defendant, William H. Adams, that the coal miners of the northern Colorado coal fields, of whom the said John Eastenes, deceased, was one, were trespassing upon the premises of its Columbine Mine, in Weld County, Colorado, and requested him, as Governor of Colorado, to send said prohibition enforcement agents to its said Columbine Mine for the purpose of summarily and by use of force and arms preventing said coal miners, of whom the said John Eastenes, deceased, was one, from further trespassing on its said Columbine Mine premises. And in response to said request of said defendant, The Rocky Mountain Fuel Company, it was determined, understood and agreed by and between the defendants * * * that * * * Adams, pretending to act by virtue and in the exercise of his official power and authority as Governor of Colorado, * * * would order and command said defendants * * * Scherf and * * * Lee, and said eighteen (18) other prohibition enforcement agents, to arm themselves with deadly weapons consisting of pistols rifles and machine guns, and go to said Columbine Mine and there make their rendezvous and there assume and exercise a false and fictitious official power and authority * * * in this, to wit: That the coal miners of the northern Colorado coal fields, of whom the said John Eastenes, deceased, was one, should be compelled to recognize and accept said defendant * * * Scherf, as a military dictator and despot whose orders and commands, given verbally or otherwise, were to supersede the law of the land and were to be enforced by direct and summary action on the part of the said * * * Scherf

and said nineteen (19) other armed prohibition enforcement agents as a military unit and quite without resort to the courts and in complete disregard of the duly constituted civil authorities and in violation of that provision of the Constitution of the United States and of the Constitution of the State of Colorado which provides that no person shall be deprived of life, liberty or property without due process of law; and that said defendants, Lewis N. Scherf and Samuel W. Lee, and said eighteen (18) other prohibition enforcement agents so cooperating, confederating and acting with them in the premises, should by force and arms and the use of deadly weapons act as a military unit and quite without resort to the courts and in complete disregard of the duly constituted civil authorities and in violation of that provision of the Constitution of the United States and of the Constitution of the State of Colorado which provides that no person shall be deprived of life, liberty or property except by due process of law, arbitrarily prevent the coal miners of the northern Colorado coal fields, of whom said John Eastenes, deceased, was one, from coming upon said Columbine Mine premises contrary to the wish of said defendant, The Rocky Mountain Fuel Company, and against the command or in violation of the order of said defendant * * * Scherf.

"5. And * * * said defendant, The Rocky Mountain Fuel Company, did aid, assist and co-operate with said other defendants and said eighteen (18) other armed prohibition enforcement agents in the matter of carrying out and accomplishing said wrongful and unlawful purpose, plan and common design, as set forth in paragraph 4, supra, in that it did invite and receive said defendants * * * Scherf and * * * Lee, and said eighteen (18) other armed prohibition enforcement agents, upon its said Columbine Mine premises with their machine guns and other weapons together with their ammunition and supplies, and did provide and furnish lodgings for them, and did willingly and voluntarily permit them to take

full and complete possession of its said mine premises as and for their military base from which to operate * * *

"6. On said 21st day of November, A. D. 1927, said John Eastenes, deceased, came upon said Columbine Mine premises contrary to the wish of said defendant, The Rocky Mountain Fuel Company, and against the command and in violation of the order of said defendant * * * Scherf, and was then and there, pursuant to said wrongful and unlawful purpose, plan and common design, as set forth in paragraph 4, supra, shot and killed by said defendants * * * Scherf and * * * Lee, and said eighteen (18) other prohibition enforcement agents, but this plaintiff does not know whether said fatal shot was fired by said defendant * * * Scherf, or by one of said eighteen (18) other armed prohibition enforcement agents, because they were all armed with deadly weapons and each and all of them fired many times. And plaintiff says that by said wrongful killing of her said husband, John Eastenes, she and her said minor children were damaged in the sum of five thousand ($5,000) dollars."

Such an affidavit as that of the attorney for the plaintiff, above mentioned, when interposed to the aforesaid motions of the defendants, Adams, Scherf and Lee, as applied to the final allegations of the plaintiff just quoted, is no better than no affidavit at all. The motions should have been sustained, and the case dismissed as to the three defendants named.

The court below erred in denying the motions to strike the plaintiff's pleading from the files as a sham pleading. It was then called upon to rule on the demurrers filed by each of the five defendants. The demurrers search the whole record. With the demurrers thus shedding light back over the case to the very beginning, including the verified and unimpeached motions referred to, the record so searched brings the vital question into bold relief, namely: Is there enough in the pleadings and the record as they stand to charge even a prima facie liability upon the Governor of the state, the two defend-

268

ants who have been duly appointed by him as law enforcement officers under C. L. '21, §3723 (since repealed), the Rocky Mountain Fuel Company, or its officer? This question must be answered in the negative. It is apparent from the fourth amended complaint, in the light of what we have said, that the company, through its agents, had only exercised its rights under the law in seeking governmental protection against the threatened onslaughts by persons admittedly trespassing on its property. These persons had been duly warned to stay away, but are shown to have been in the actual or attempted commission of crime when the unfortunate death here involved came to the husband of the plaintiff.

The trial court properly sustained the defendants' demurrers, and was right in dismissing the case.

Judgment affirmed.

MR. JUSTICE CAMPBELL not participating.