## No. 15,025.

MIDWEST FUEL AND TIMBER COMPANY *v.* STEELE.

(142 P. [2d] 1011)

Decided November 1, 1943.

Messrs. IRWIN, O'CONNELL & ZARLENGO, Mr. ISAAC MELLMAN, for plaintiff in error.

Mr. CASS M. HERRINGTON, for defendant in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THIS action was commenced in the district court by plaintiff in error, as plaintiff, against defendant in error and her two sisters, as defendants. Neither of the latter two was served with process or appeared, so, notwithstanding the allegations of the complaint are directed to "the defendants," we shall refer to the parties in the singular, as plaintiff and defendant.

The question presented here is whether the district court erred in granting the motion of defendant to strike the replication of plaintiff as sham and irrelevant and thereupon in entering judgment dismissing the action.

It appears from the record that in 1917 defendant leased certain subsurface coal rights in Weld county to the Evans Fuel Company, a corporation, on a royalty basis. Subsequently, with the consent of defendant and her colessors, the lease was assigned to the International Fuel Corporation, which later became bankrupt. In 1925, in consideration of the agreement by plaintiff to pay certain back royalties, defendant consented in writing to the assignment of the lease to plaintiff by the trustee in bankruptcy of the International Company. Paragraph nine of the lease provided, inter alia, that lessors (defendant) "shall hold, save and keep harmless the lessee from and against all claims of any and all persons for damages" for subsidence or sinking of the surface of the land resulting from mining operations carried on in good, substantial and miner-like manner. In 1935 one Joe Revielle sued the plaintiff (lessee) and recovered judgment for $5,500 as damages for the settling and sinking of the surface of the ground occasioned by mining operations on the leased premises. The complaint herein, after setting forth the above matters, as

well as that the mining operations in question had been carried on under, and in conformity with, the terms of the lease, further alleged that due notice of the claim of said Joe Revielle and of the filing of his suit had been given to defendant by plaintiff, but that defendant had failed and refused to defend said action or to hold plaintiff harmless therefrom, as the result of which plaintiff claimed damages from defendant in the sum of $6,910, being the amount of the Revielle judgment, plus $200 costs, $710 interest and $500 attorney fees allegedly expended by plaintiff in defense of the Revielle action.

In addition to specific admissions and denials of the allegations of the complaint, the answer of defendant set up a number of additional defenses in which, inter alia, it was asserted that the damages, if any, suffered by Revielle were caused by mining operations conducted in 1935 by plaintiff's sublessee, the Liley Coal and Mining Company, and that since defendant in 1930, with the knowledge of plaintiff, had sold and conveyed her reversionary interest in the property to one A. G. Reynolds, there had been since the date of such conveyance, no privity of contract or estate between defendant and plaintiff; that the 1935 mining operations causing the subsidence were not conducted in a "miner-like manner" as required by the lease; that recovery by plaintiff was precluded by its subleasing to the Liley Company without the written consent of defendant as allegedly was required by the express terms of the lease; that instead of being obligated to pay a $500 attorney fee in the Revielle case, plaintiff in fact had expended but $25.00; that paragraph nine of the lease, upon which plaintiff's action was grounded, was a personal covenant with the original lessee and did not inure to plaintiff's benefit and that the payment by plaintiff of royalties to A. G. Reynolds, the defendant's grantee, caused a novation between plaintiff and Reynolds relieving defendant from all obligation under the lease.

The verified replication made general denials of the

new matter alleged in the answer and in addition, as to some of the defenses, pleaded facts in avoidance. Defendant moved to strike from the replication as irrelevant, the denials of the defenses of novation and lack of privity and the affirmative allegations that plaintiff did not know of defendant's alleged conveyance to Reynolds and did not recognize any other lessor until after 1935, and as sham the plaintiff's denial of defendant's conveyance; the denial of any subleasing without defendant's consent, and a related allegation that after the date thereof defendant had inspected the property and had dealt with plaintiff as her lessee and the denial of the allegations of the answer with respect to the attorney fees in the Revielle case.

For the purpose of establishing that parts of the replication were sham, defendant filed an affidavit reciting that she and her sisters had executed, acknowledged and recorded the deed to Reynolds as alleged in the answer and thereupon had ceased to have an interest in, or control over, the property; that thereafter they had never inspected the property nor had any agreement with plaintiff or its sublessees with respect thereto. Upon such basis and the assertion that plaintiff's denial was "contrary to the testimony introduced in a cause on the docket of this [district] court wherein this defendant was garnisheed," the affidavit then categorically asserted by way of conclusion that the challenged portion of the replication was "without the slightest foundation of truth," a "deliberate fabrication" and "not made in good faith." No counter-affidavit was filed by plaintiff. The court sustained the motion to strike, which substantially nullified the replication, and allowed plaintiff leave to amend or to elect to stand. Within the period prescribed, plaintiff filed an amended verified replication identical with the first, except that in the amended version it admitted that the deed mentioned in the answer was recorded and that the copy attached to the answer was a certified copy thereof; additionally it alleged that de-

fendant, by the subsequent acceptance of royalty and inspection of the premises, was estopped from asserting any defense based upon plaintiff's alleged subletting to the Liley Company without the defendant's written consent. Defendant promptly filed a motion to strike the amended replication and for judgment on the pleadings "or, in the alternative to strike from the amended replication those same matters heretofore stricken" from the original. The court ordered "that said motion to strike and for judgment be, and the same hereby is granted." Judgment of dismissal and for costs was entered in due course.

We think the suggestion of counsel for defendant that, since the motion was couched in the alternative, the order granting it may be considered as striking only the parts of the amended replication previously stricken from the original, is purely hypothetical. Rather, as plaintiff contends, we are satisfied from the form of the order and the summary judgment of dismissal which followed, that the court intended to, and did, strike the replication in its entirety.

Notwithstanding that, pro forma, plaintiff was given sixty days within which to prepare and tender its bill of exceptions, none such is lodged here, and the matter is submitted on the clerk's record as certified by him and one of the judges of said court. Counsel who represents plaintiff here, did not appear in the proceeding below, but in his brief states unequivocally, on the basis of his investigation and inquiry, that nothing transpired in the district court with respect to the questions here under consideration which could have been included in a bill of exceptions. While counsel for defendant in his brief intimates that from testimony given and dispositions made in another case, the judge who last passed upon the motion to strike was well acquainted with what are called the true facts in the case at bar, no claim is made that the record does not exemplify the entire procedure therein.

Under the record, as appears from the foregoing recitals with respect to the pleadings, plaintiff, in its verified replication, made certain denials of allegations of fact in defendant's answer and alleged certain new facts by way of avoidance. By her affidavit and motion to strike, defendant branded as untrue, and so, sham, the sworn denials and allegations of plaintiff's replication. In so far as the record discloses, the resolution of this conflict only could have been made by the trial court upon the basis of a determination of the veracity of the respective parties from their pleadings. Plaintiff contends that such procedure deprived it of the right of trial and a determination of the issues in the case in the usual and ordinary manner. Defendant relies upon the case of *Eastenes v. Adams*, 93 Colo. 258, 25 P. (2d) 741, as authority for the action taken by the district court. That case was an action by a wife against the Governor of the state, certain of its law enforcement officers and others, for damages for and on account of the death of plaintiff's husband occurring as an incident of mob violence. The district court had sustained general demurrers to the wife's "fourth amended complaint," and upon her election to stand, dismissed the action. The wife brought the case here seeking a reversal of such judgment of dismissal. We held that the district court properly determined that the complaint did not state a cause of action and affirmed its judgment. Previous to the interposition of the demurrers the Governor had moved to strike the complaint as being a sham pleading. This motion was verified and was supported additionally by several affidavits reciting factual matters relating to the merits of the controversy. A counter-affidavit, which the author of the opinion of the court said was based on "mere opinion, unsupported by specific allegations of fact," was made and filed by the wife's attorney. The motion to strike was overruled by the court. In the recital of the proceedings it is stated in the opinion concerning such motion to strike: "We

have no hesitancy in saying that the showing thus made by Governor Adams, in the form of a verified plea, was sufficient to call for an equally formidable and detailed answer thereto, or verified showing to the contrary. There is no fairer or more effective method known to us of presenting the issue of sham pleading than the one his counsel have adopted herein. A court ought not to hesitate in granting a prompt trial of such a preliminary issue of sham pleading without requiring a party to incur the expense of time and money involved in postponing its determination until later in the proceedings, possibly until the main trial. Looking through the form and at the substance, a court has the power of controlling—and of condignly punishing—all attempts, should any be made, to impose upon the court by raising the issue frivolously or with palpable insincerity. The method chosen by defendants' counsel in this case was signally appropriate, used as it was on behalf of the chief executive of the state for the purpose of conserving in the interest of the whole people the strength and energies required for the faithful performance of his gubernatorial duties, unhindered and unharrassed by unjustified court proceedings, though plausible on their face. In the absence of any and all showing to the contrary, the allegations of the motion stood proved and admitted. The motion therefore ought to have been sustained by the lower court, and Governor Adams dismissed from the case."

Considering the real issue in the Eastenes-Adams case, as first above stated, the observations of the writer of the opinion concerning the motion to strike, while likely factually justified therein as a general proposition, clearly amounted to dicta in some degree, and in part at least, seem contrary to the prevailing rule, which is well stated in 41 American Jurisprudence, page 535, section 355, as follows: "On a motion to strike on the ground that a pleading is sham, it is not the province of the court to determine the veracity of the respective

parties; that is a question of fact to be determined on the trial. The duty of the court is to determine whether an issue of fact is presented, not to try that issue." See, also, *Gordon v. Brotherhood,* 109 Colo. 347, 125 P. (2d) 140.

Thus, we are of the opinion that the district court erred in striking from the replication the portions thereof challenged as being sham, and in dismissing the action. The judgment is reversed without prejudice to the right of defendant to again present to the district court her motion to strike portions of the replication on the grounds of irrelevancy.

MR. CHIEF JUSTICE YOUNG, MR. JUSTICE HILLIARD and MR. JUSTICE GOUDY concur.